04-1550ghmDickieM&O.wpd

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD DICKIE, | § | |
| TDCJ-CID #1151330, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-1550 |
| | § | |
| RAUL MORENO, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Richard Dickie, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint under 42 U.S.C. § 1983 against Raul Moreno, City of Houston police officer Charles C. Robertson, the City of Houston, and the unnamed owners of the Eclipse Nightclub and its security guard company. (Docket Entry No. 1). The City of Houston was served and filed a motion for summary judgment. (Docket Entry No. 24.) Summonses on the other defendants were returned unexecuted.

The certificate of service attached to the City of Houston's motion for summary judgment shows that Dickie was served with a copy of the motion on February 28, 2006, at his address of record. (Docket Entry No. 24, p. 12.) Although a reasonable time has expired, Dickie has neither responded to the motion nor requested additional time to respond to the motion.

After considering the pleadings, motion, summary judgment evidence, records, and

applicable law, this Court **GRANTS** the motion for summary judgment, and, by separate

order, enters final judgment dismissing this case.

## I.   FACTS AND CLAIMS

The record and summary judgment evidence show that on the evening of June 21,

2002, at a Houston nightclub known as the Eclipse, Dickie was detained by Raul Moreno and

Mandeep Khara, private security guards employed by the nightclub,[1] for possession of

marijuana, cocaine, and other drugs.   Houston Police Department Officer Charles C.

Robertson arrived and placed Dickie under arrest.  While Officer Robertson was exchanging

the security guards' hand restraints for police restraints, Dickie broke away and fled.  He

quickly was caught and returned to the scene, but again broke away and escaped.  (Docket

Entry No. 24, Exhibit B – Affidavit of Officer Charles C. Robertson.)  In his more definite

statement, Dickie denies attempting to escape, and alleges instead that Officer Robertson or

one of the security guards gave him "a push in the back" and that the "pushes momentum"

caused him to continue running across the street to the back of an abandoned convenience

store where he became stuck behind a trash dumpster.  (Docket Entry No. 12, p. 5.)  In other

portions of his more definite statement, Dickie asserts that he ran away from the scene out

of fear for his safety.  (*Id*.)  Dickie further alleges that one of the nightclub's security guards,

Raul Moreno, chased him down and, while Dickie was trapped unarmed behind the dumpster

---

[1]Dickie does not claim, and nothing in the record shows, that Moreno and Khara were off-duty police officers.

and posing no threat, shot him in the leg.  Dickie admits that Officer Robertson was not at

the scene of the shooting.

Dickie argues that because he was arrested and in custody of Officer Robertson prior

to the shooting, the officer should have taken steps to prevent Moreno from shooting him.

Dickie seeks $1.5 million in damages.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

In deciding a motion for summary judgment, the district court must determine whether

the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the summary judgment evidence, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

Once the movant presents a properly supported motion for summary judgment, the burden

shifts to the nonmovant to show with significant probative evidence the existence of a

genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.

2000).  All evidence must be construed "in the light most favorable to the nonmoving party

without weighing the evidence, assessing its probative value, or resolving any factual

disputes."  *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

However, the nonmovant cannot rely on conclusory allegations or unsubstantiated assertions

to establish that there is a triable issue.  *Wallace v. Texas Tech University*, 80 F.3d 1042,

1047 (5th Cir. 1996).

## III.  <u>FAILURE TO PROTECT</u>

Dickie claims that because Officer Robertson had arrested him, he was a detainee in custody of the police and entitled to protection under the Fourteenth Amendment at the time he was shot.  As an initial observation, the Court notes that at the time he was allegedly shot by Moreno, Dickie was no longer in custody of Officer Robertson or any other City of Houston police officer.  To the contrary, Dickie admits that he had escaped from Officer Robertson and was hiding behind a convenience store dumpster when he was shot by the security guard.  Dickie presents no legal authority for his claim that as an escapee hiding from his arresting officer, he was still "in custody" of that officer for purposes of his failure to protect claim.

As shown in Officer Robertson's summary judgment affidavit, he did not know where Dickie went following his escape, had no control over the security guards who gave chase, and did not leave the scene to look for Dickie until after securing the drug evidence in his patrol car.  Officer Robertson testifies in relevant part as follows:

> As [Dickie] was being helped to his feet, he again broke free and ran, this time running across the parking lot with one of the security guards in pursuit.
>
> I returned to my patrol car to secure the evidence.  I got into my unit and proceeded east on Clarewood.  At that point, I had lost sight of the suspect and the guards.  A citizen at a bus stop pointed north on Marinette.  As I turned north bound on Marinette, I heard one shot fired.  Eventually I located the security guards and the suspect in the alley on the west side of the 6300 block of Marinette.

Upon approaching the guards and the suspect, I noticed the suspect had a bullet hole in the front of his pants. I requested West Side Dispatch call for an ambulance.

At all times pertinent to this incident, I acted as a reasonable and competent law enforcement officer would act in such a situation. At no time did I understand that any of my actions were in violation of any clearly established law.

I never threatened to run over the suspect with my patrol car.

I did not 'allow' the security guards to pursue the suspect. I had no control over what the security guards did at the time they took off after the suspect. I made a decision that my priority at that time was to secure the evidence that I had previously placed in my patrol unit.

I was not at the scene at the time the suspect was shot by the security guard. I was not in a position to stop the security guard from shooting the suspect. Furthermore, I did not fail to protect the suspect while he was in my custody. The suspect voluntarily fled from my custody, which amounted to resisting arrest.

(Docket Entry No. 24, Exhibit B – Affidavit of Officer Charles C. Robertson.)

The right of a pretrial detainee to protection from violence is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). *See Hare v. City of Corinth*, 135 F.3d 320, 324 (5th Cir. 1998). Under that standard, a custodial officer is not liable for failing to protect a person in custody unless the officer knows of and disregards an excessive risk to the detainee's safety; negligence cannot form the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835. A plaintiff must show that the custodial officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that he actually drew the

inference.  *Id*.  In the instant case, Dickie must present probative evidence that Officer Robertson was aware of facts from which an inference could be drawn that Moreno presented a substantial risk of serious harm to Dickie, and that he actually drew that inference.  *See Farmer*, 511 U.S. at 837.

Dickie has not responded to the motion for summary judgment, has not controverted Officer Robertson's affidavit testimony, and presents no probative evidence under the *Farmer* standard that Officer Robertson knew of but disregarded an excessive risk to Dickie's safety.  Dickie's claims against Officer Robertson for failure to protect and deliberate indifference to his safety are conclusory, unsupported by probative evidence, and insufficient to raise a genuine issue of material fact precluding summary judgment.  Officer Robertson is entitled to summary judgment dismissing Dickie's failure to protect claim.

## IV.  QUALIFIED IMMUNITY

Officer Robertson raises the defense of qualified immunity.  Qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, a preliminary inquiry must be made whether, considering the facts alleged in the light most favorable to the plaintiff, the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993). If the plaintiff's allegations fail to establish the violation of a constitutional right, the defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 193, 201 (2001).

If the initial inquiry is satisfied, the second prong of the qualified immunity test must be considered: whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998). The determination of the objective reasonableness of particular conduct in light of the subjective deliberate indifference standard is a question of law for the court. *Id*.

Although it may be difficult to imagine factual circumstances in which a trier of fact could find deliberate indifference as defined by *Farmer* and nevertheless conclude that a reasonable person in defendant's position was not chargeable with knowledge that his or her actions violated a plaintiff's clearly established constitutional rights, in analyzing a claim of qualified immunity, the test is objective reasonableness, not subjective deliberate

indifference. *Id*. Consequently, at the qualified immunity stage, the deliberate indifference standard only allows an examination of whether, under the standard not to be deliberately indifferent, the acts or omissions of the defendant were objectively unreasonable as a matter of law. *Id.*

As previously noted, Officer Robertson's uncontroverted affidavit testimony shows that he had no control over what the security guards did when they chased after Dickie following his escape, and that he made a decision that his priority was to secure the drugs and other evidence in his patrol unit. (Docket Entry No. 24, Exhibit B – Affidavit of Officer Charles C. Robertson.) After securing the evidence, he drove from the scene and was directed by a citizen to head north on Marinette. As he turned north on Marinette, he heard a gun shot. He eventually located Dickie and the security guards on Marinette, at which point he saw that Dickie had been shot and called for an ambulance. (*Id*.) Dickie admits that he had escaped from Officer Robertson, and that Officer Robertson was not present when Moreno shot him.

Dickie's allegations against Officer Robertson fail to rise to the level of violation of a clearly established constitutional right, and, therefore, fail the first prong of the qualified immunity inquiry. Regardless, Officer Robertson's actions following Dickie's escape were not objectively unreasonable as a matter of law. Officer Robertson is entitled to qualified immunity, and Dickie's Fourteenth Amendment claims against him will be dismissed.

## V.  MUNICIPAL LIABILITY

Dickie claims that as the employer of Officer Robertson, the City of Houston is liable for the officer's failure to protect him from being shot by Moreno.  A city is not liable for constitutional violations committed by its employees unless those violations result directly from a municipal custom or policy.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Nor is a city liable under either a theory of *respondeat superior*,  vicarious liability, or for mere negligence in oversight.  *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985); *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992).  Therefore, to hold a municipality liable, a plaintiff must show that his constitutional deprivation was caused by the city's adoption of (or failure to adopt) the particular policy, and that such actions went beyond mere negligent protection of the plaintiff's constitutional rights.  *Olabisiomotosho v. City of Houston*, 185 F.2d 521, 528-29 (5th Cir. 1999).

Dickie's basis for suing the City of Houston is grounded in its employment of Officer Robertson. Dickie fails to show a constitutional deprivation caused by the City of Houston's adoption, or failure to adopt, a particular policy.  Accordingly, Dickie establishes no basis for asserting a claim against the City of Houston for the alleged acts and omissions of Officer Robertson. The City of Houston is entitled to summary judgment dismissing Dickie's claims against it.

## VI.   CLAIMS AGAINST PRIVATE ACTORS

To raise a cognizable claim under 42 U.S.C. § 1983, a plaintiff must show that his constitutional rights were violated by a state actor. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).  As a threshold matter, for Dickie to state a viable claim under § 1983 against a private defendant such as the nightclub and security company owners and Moreno, the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law.  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982).  The focus of this inquiry into whether the private actor can be subjected to constitutional liability is whether "such a close nexus between the State and the challenged action" exists that "seemingly private behavior may be fairly treated as that of the State itself."  *Brentwood Acad. v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001).

In the instant case, Dickie presents no probative summary judgment evidence of a close nexus between Officer Robertson or the City of Houston and Moreno such that Moreno's shooting of Dickie fairly constituted an act of the City of Houston.  Dickie raises no cognizable section 1983 claim against the nightclub owners, security company owners, or Moreno, and those claims will be dismissed.

## VII.   CLAIMS FOR FALSIFICATION AND CONSPIRACY

Dickie claims that defendants falsified the police reports regarding this incident, and conspired to cover-up the wrongful shooting and prevent him from obtaining a copy of the

10

reports.   Regarding the falsification claim, Officer Robertson testifies in his summary judgment affidavit as follows:

> Furthermore, and finally, I did not enter any false information in my incident report.   A true and correct certified copy of the report is attached to this Affidavit as Exhibit 1 and incorporated as if fully set forth herein.   The information contained in that report was recorded at or near the time of the event and is kept in the regular course of business by the Houston Police Department.   This report is available to the public.

(Docket Entry No. 24, Exhibit B – Affidavit of Officer Charles C. Robertson.)

Dickie fails to controvert Officer Robertson's testimony.   The record is devoid of any probative evidence that Officer Robertson or any other defendant falsified the police reports.

To present a conspiracy claim under section 1983, a plaintiff must allege and present evidence of (1) an agreement between persons acting under color of law to commit an illegal act, and (2) an actual deprivation of the plaintiff's constitutional rights in furtherance of the conspiracy.   *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).   Conclusory allegations of conspiracy will not support a claim under section 1983.   *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992).   Dickie fails to support his allegations of conspiracy with any facts demonstrating an agreement between the defendants to conspire against him to violate his constitutional rights, and fails to demonstrate an actual deprivation of his constitutional rights in furtherance of the alleged conspiracy.   *See Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991) (holding that a civil rights claim of conspiracy must include allegations of specific operative facts).

Dickie's claims of falsified records and a conspiracy are conclusory, unsupported, and insufficient to raise a genuine issue of material fact precluding summary judgment.  The defendants are entitled to summary judgment dismissing these claims against them.

## VIII.   STATE LAW CLAIMS

Dickie raises claims under state law against the defendants for assault, battery, and negligence.  He also claims that Moreno was an unlicenced security guard carrying a firearm in violation of state penal laws.  A federal district court has supplemental jurisdiction over all other claims that are so related to claims in the action within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367(a).  This Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  Because the Court has dismissed Dickie's section 1983 claims against the defendants, it declines to exercise supplemental jurisdiction over Dickie's state law claims.

## IX.   CONCLUSION

The motion for summary judgment (Docket Entry No. 24) is **GRANTED**.  This case

is **DISMISSED WITH PREJUDICE**.  Any pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on July 13, 2006.

_____
GRAY H. MILLER
UNITED STATES DISTRICT JUDGE